Edward A. Pennington (D.C. Bar No. 422006) (admitted *pro hac vice*)
epennington@sgrlaw.com
John P. Moy (D.C. Bar No. 466908) (admitted *pro hac vice*)
jmoy@sgrlaw.com
Sean T.C. Phelan (D.C. Bar No. 997681) (admitted *pro hac vice*)
sphelan@sgrlaw.com
John P. Pennington (D.C. Bar No. 1018204) (admitted *pro hac vice*)
jpennington@sgrlaw.com
**SMITH, GAMBRELL & RUSSELL, LLP**
1055 Thomas Jefferson Street, N.W., Suite 400
Washington, D.C. 20007
Telephone: 202.263.4300
Facsimile: 202.263.4329

Michael L. Kirby (SBN 50895)
mike@kirbyandkirbylaw.com
Heather W. Schallhorn (SBN 299760)
heather@kirbyandkirbylaw.com
**KIRBY & KIRBY LLP**
501 West Broadway, Suite 1720
San Diego, California 92101
Telephone: 619.487.1500
Facsimile: 619.501.5733

**Attorneys for Plaintiff InfoGation Corp.**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

INFOGATION CORP.,

Plaintiff,

v.

HUAWEI DEVICE USA, INC., HUAWEI DEVICE CO., LTD., and HUAWEI DEVICE (DONGGUAN) CO.,

Defendants.

Case No.: 3:16-cv-01903-H-JLB

**INFOGATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS UNDER F.R.C.P. 12(C)**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. THE '743 PATENT ..... 2

III. LEGAL STANDARDS ..... 4

IV. ARGUMENT ..... 5

A. *Alice* Step One – Claim 15 of the '743 Patent is Not Directed to an Abstract Idea ..... 5

1. The Claim is Directed to a Specific Improvement to Mobile Navigation Technology ..... 7

2. The Defendants' Narrow Focus on Mere "Natural Language" is Misplaced ..... 8

B. *Alice* Step Two – Claim 15 of the '743 Patent Recites an Inventive Concept ..... 9

1. Claim 15 Recites an Ordered Combination That Solves a Technology-Based Problem ..... 10

2. Functional Language in Claim 15 Does Not Preclude a Finding of an Inventive Concept ..... 11

V. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ........................................ passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) ........................................ 10, 11

*Bascom Global Internet Svcs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ........................................ 10, 11

*Bilski v. Kappos*,
561 U.S. 593 (2010) ........................................ 4

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ........................................ 6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ........................................ 5, 9

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........................................ 5, 6, 7, 8

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ........................................ 5

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ........................................ 6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) ........................................ 4, 5

*McRO v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ........................................ 6

## Statutes

35 U.S.C. § 101 ........................................ 4

Plaintiff InfoGation Corp. ("InfoGation") hereby submits its opposition ("Opposition") to Defendants Huawei Device USA, Inc., Huawei Device Co., Ltd., and Huawei Device (Dongguan) Co.'s Motion for Judgment on the Pleadings under F.R.C.P. 12(c) ("Defendants' Motion for Judgment on the Pleadings").

## I. INTRODUCTION

Defendants' motion for judgment on the pleadings is premised on a distortion of the claim language of claim 15 of U.S. Patent No. 6,292,743 ("the '743 patent"). Indeed, Defendants' contention that the claim is directed simply to "providing directions in a natural language" rests on an artificially high level of abstraction that entirely ignores the specification of the '743 patent, in contravention of the two-step inquiry enunciated by the U.S. Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347, 2355 (2014).

The first step of that inquiry requires a determination as to whether the character of the claim as a whole, in view of the patent specification, is directed to patent-eligible subject matter. A review of the language of claim 15, performed in light of the patent specification, confirms that the claim is directed to a patent-eligible improvement in mobile navigation technology. The claim makes use of a non-proprietary, natural language description to avoid what the '743 patent specification refers to as database mismatch failures, as well as to increase the interoperability of navigation servers and client devices.

Moreover, even if the claim language was directed to ineligible subject matter, as the Defendants claim, the ordered combination of the claim limitations of claim 15 constitutes an inventive concept that transforms the claim into a patent-eligible application. Indeed, the combination of receiving route information in a non-proprietary, natural language description and reconstructing the route using a local mapping database is an unconventional activity that results in a technological improvement over prior navigation systems.

Accordingly, because Defendants cannot establish that claim 15 of the '743 patent fails both steps of the *Alice* analysis, Defendants' motion for judgment on the pleadings should be denied.

## II. THE '743 PATENT

The application that issued as the '743 patent was filed on January 6, 1999. Titled "Mobile Navigation System," the '743 patent is generally directed to a "mobile navigation system and apparatus, and more particularly to a distributed navigation system having a wireless connection to a server for calculating optimal routes using real-time data." ('743 patent, col. 1, ll. 5-8).

The specification of the '743 patent discusses some of the navigation technologies that were available at the time of the patent application filing. The patent discusses stand-alone navigation devices "that rely completely on data stored on the local storage device for geographical and other information." ('743 patent, col. 1, ll. 28-30). Such stand-alone navigation devices have their limitations. One particularly significant limitation is that, because they rely entirely on data stored locally, stand-alone navigation devices are unable to incorporate real-time data such as traffic, weather, and road conditions when determining optimal routes. ('743 patent, col. 1, ll. 38-41).

Navigation systems that can connect to an online server can overcome some of the limitations of stand-alone devices. The '743 patent discusses the Toyota MONET system as an example of one such system that was available at the time of the invention. The MONET system allowed the user's device (the client) to connect to a server, which allowed the server to transmit traffic advisory information to the client. ('743 patent, col. 1, ll. 46-52).

However, the MONET system and other similar client-server systems had their own unique limitations. As the specification of the '743 patent points out, at the time of the invention, geographical data provided by the server to the client in navigation systems was in a proprietary format that was specific to the particular mapping database used by the client. ('743 patent, col. 1, ll. 62-67). This potentially resulted in significant problems for users of such client-server systems:

> Accordingly, the client navigation system must have a particular pre-defined mapping database installed in order to work with the server. In some cases, the mapping database used by the client and server must be identical. If there is a mismatch between the expected mapping database and the actual mapping database used on the client, the client cannot properly interpret the geographical data downloaded from the server and the system will fail to operate.

('743 patent, col. 2, ll. 1-8). Thus, customers had to frequently update the mapping databases on their client devices in order to avoid this database "mismatch" failure. ('743 patent, col. 2, ll. 9-13). In addition, because the client mapping database had to match with the server to read the geographical data provided in a proprietary format, the server could not be used with navigation systems and mapping databases provided by other manufacturers. ('743 patent, col. 2, ll. 35-42).

The '743 patent provided the following solution to this technological incompatibility problem. First, the '743 patent calls for route generation to take place at the server instead of the client, where the server calculates the optimal route based on real-time conditions. This enabled client devices to be less complex than those available at the time of the patent application. ('743 patent, col. 2, ll. 53-59). Second, the route generated by the server was received by the client in a non-proprietary, natural language description:

> A generic natural language description is used to specify optimal routing information that is transmitted from the server to the client. ***The natural language description is completely independent from the local mapping database software used on the clients, and can therefore be used in conjunction with any type of mapping database software.***

('743 patent, col. 3, ll. 21-26) (emphasis added).

Third, the '743 patent calls for that route information to then be reconstructed at the client in the format required by the client:

> The routing information is formatted using a natural language specification in accordance with each specific embodiment of the present invention. Generally this specification includes a plain text description for each link in the route using pre-defined generic terms such as road names and turning directions. The client interprets this routing data and interfaces with the local mapping database to reconstruct, in the format required by the client, the optimal route from the natural language description. This is accomplished by using a mapping reconstruction algorithm stored on the client.
>
> Once the route is reconstructed, it is displayed on the display screen on the client navigation system, using whatever mapping database is present on the

client. ***In this fashion, the database software used on the server is completely hardware and software independent from that used on the client.***

('743 patent, col. 3, ll. 35-51) (emphasis added). By generating the route at the server instead of the client, and with the client receiving that routing information in a non-proprietary natural language format and reconstructing that route, the '743 patent not only solved the problem of database mismatch failure, but also allowed for greater interoperability between navigation servers and clients, thereby improving upon the existing technological process of mobile navigation that existed at the time of invention.

## III. LEGAL STANDARDS

Section 101 of Title 35 of the United States Code "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Under § 101, the scope of patentable subject matter encompasses "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." *Id.* (quoting 35 U.S.C. § 101). These categories are broad, but they are not limitless. Section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354 (internal quotation marks omitted). These three exceptions are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012) (internal quotation marks omitted). The U.S. Supreme Court has explained that allowing patent claims for such purported inventions would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.* at 70. However, the Court has also cautioned that "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (quotation marks and alterations omitted). Accordingly, courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*

In *Alice*, the leading case on patent-eligible subject matter under § 101, the Court refined the "framework for distinguishing patents that claim laws of nature, natural

phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts" originally set forth in *Mayo*, 566 U.S. at 77. This analysis, generally known as the "*Alice*" framework, proceeds in two steps as follows:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept" – i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Alice*, 134 S. Ct. at 2355 (citations omitted and alterations in original); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (describing "the now familiar two-part test described by the U.S. Supreme Court in *Alice*").

As set forth below, the Defendants are unable to meet their burden of establishing that claim 15 of the '743 patent fails both steps of the *Alice* inquiry.

## IV. ARGUMENT

### A. *Alice* Step One – Claim 15 of the '743 Patent is Not Directed to an Abstract Idea

In step one of the *Alice* inquiry, this Court "must first determine whether the claims at issue are directed to [an abstract idea]." *Id.* at 2355. Neither the U.S. Supreme Court nor the Federal Circuit has set forth a bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework. *See, e.g.*, *id.* at 2357 (noting that "[the Court] need not labor to delimit the precise contours of the 'abstract ideas' category in this case"); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (observing that the Court did not "delimit the precise contours of the 'abstract ideas' category in *Alice*") (quotation marks omitted). As a result, in evaluating whether particular claims are directed to patent-ineligible abstract ideas, courts have generally begun by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

In addition, courts look to whether the process at issue has an analog in the "brick-and-mortar" context. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding an email processing software program to be abstract through a comparison to a "brick-and-mortar" post office). Similarly, the Federal Circuit has considered whether the claims are, in essence, directed to a mental process or a process that could be done with pen and paper. *See, e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (finding a claim for verifying the validity of a credit card transaction over the Internet as invalid because the "steps can be performed in the human mind, or by a human using a pen and paper").

Moreover, when computer-related claims are at issue, courts look to whether the claims purport to "improve the functioning of the computer itself," which may suggest that the claims are not abstract. *Alice*, 134 S. Ct. at 2359. Thus, claims that recite improvements in computer functionality are patent-eligible. *See Enfish*, 822 F.3d at 1339 (method for improving "the way a computer stores and retrieves data in memory" was not abstract); *McRO v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) (claims "focused on a specific asserted improvement in computer animation" were not abstract). However, if "computers are invoked merely as a tool" in the asserted claim to carry out an abstract process, the claim is still considered to be abstract. *Enfish*, 822 F.3d at 1336.

This analysis is not simply determining "whether the claims ***involve*** a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions ***involves*** a law of nature and/or natural phenomenon – after all, they take place in the physical world." *Id.* at 1335 (emphasis in original). Rather, this step of the analysis requires a determination, in view of the patent specification, as to whether the character of the claims as a whole ***are directed to*** excluded subject matter. *Id.*

Application of the *Alice* framework compels a conclusion that claim 15 of the '743 patent is not an abstract idea. To the contrary, claim 15 is directed to solving a specific problem affecting mobile navigation technology.

**1. The Claim is Directed to a Specific Improvement to Mobile Navigation Technology**

Claim 15 of the '743 patent, the only asserted claim in this litigation, is directed to the client navigation system and reads as follows:

> 15. A mobile navigation system comprising:
>
> a navigation computer;
>
> a wireless transceiver coupled to said navigation computer for connecting with a navigation server, said navigation server for calculating optimal routes based on real-time information, said optimal routes being formatted using a non-proprietary, natural language description;
>
> a mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description; and
>
> a display screen coupled to said navigation computer for displaying said optimal route using said mapping database.

('743 patent, col. 17, ll. 9-23).

The Defendants contend that claim 15 of the '743 patent is directed to nothing more than the abstract idea of providing directions in a natural language. (*See, e.g.*, Defs.' Mem. at 1). This contention, however, entirely ignores the teachings of the '743 patent specification. The language of claim 15 is focused on the improvements described and addressed in the specification of the '743 patent. By leaving the burden of route calculation to the server, the client is tasked only with receiving route information and reconstructing that route according to a non-proprietary, natural language description. In so doing, the '743 patent both ameliorated the potential for database mismatch failure and advanced client-server interoperability, thereby improving upon the technological process of mobile navigation that existed at the time of invention.

This conclusion is consistent with Federal Circuit precedent. For example, in *Enfish*, the patent claims at issue were directed to a self-referential table for a database.

*Enfish*, 822 F.3d at 1330. One of the claims at issue, claim 17, contained the following language:

> A data storage and retrieval system for a computer memory, comprising:
>
> means for configuring said memory according to a logical table, said logical table including:
>
> a plurality of logical rows, each said logical row including an object identification number (OID) to identify each said logical row, each said logical row corresponding to a record of information;
>
> a plurality of logical columns intersecting said plurality of logical rows to define a plurality of logical cells, each said logical column including an OID to identify each said logical column; and
>
> means for indexing data stored in said table.

*Enfish*, 822 F.3d at 1336.

The district court concluded that the claims were directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table" or, more simply, "the concept of organizing information using tabular formats." *Id.* at 1337. The Federal Circuit, however, overturned this finding, holding that the claims were directed not to any form of storing tabular data, but instead were specifically directed to a self-referential table for computer databases, and that the patent specification taught that the self-referential table served as an improvement to existing computer database technology. *Id.*

Because the character of claim 15 as a whole, when considered in view of the specification, is clearly directed to the technological improvements of resolving incompatibility issues resulting from mismatched databases and expanding interoperability in mobile navigation systems, claim 15 is not directed to an abstract idea, and therefore, the claim is patent-eligible under *Alice*.

**2. The Defendants' Narrow Focus on Mere "Natural Language" is Misplaced**

The Defendants contend that because humans have provided directions to each other in a natural language for thousands of years without the need for a computer, claim 15 is drawn to an abstract idea and is therefore patent-ineligible. (Defs.' Mem. at 8-11).

This argument entirely misses the mark. Neither claim 15 specifically nor the '743 patent as a whole is directed to providing the end-user with directions in a natural language. Rather, the non-proprietary, natural language description, by being in a format independent of the local mapping database software, not only avoided the database mismatch failures that plagued earlier client-server navigation systems, but also expanded the ability of navigation servers and clients to be able to be used together:

> A generic natural language description is used to specify optimal routing information that is transmitted from the server to the client. ***The natural language description is completely independent from the local mapping database software used on the clients, and can therefore be used in conjunction with any type of mapping database software.***

('743 patent, col. 3, ll. 21-26) (emphasis added). In other words, the non-proprietary, natural language description is used as a *lingua franca* to allow effective communication and further interoperability between navigation clients and servers.

Courts have recognized that claims are patent-eligible if the claimed invention is "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, 773 F.3d at 1257. Claim 15 is not an attempt to replicate human activity with a computer. Rather, claim 15 is directed to addressing technological limitations that arose with the advent of client-server navigation systems. Thus, while Defendants' claim that humans have provided each other with directions in a natural language for thousands of years may be true, it is irrelevant to the inquiry here.

### B. *Alice* Step Two – Claim 15 of the '743 Patent Recites an Inventive Concept

Because claim 15 is not directed to an abstract idea under *Alice* step one, the inquiry ends there. However, should this Court find that claim 15 is directed to an abstract idea, claim 15 remains patent-eligible under step two of the *Alice* inquiry, as it recites an ordered combination that solves a technology-based problem.

### 1. Claim 15 Recites an Ordered Combination That Solves a Technology-Based Problem

Under step two of the *Alice* inquiry, this Court must consider the elements of each claim both individually and as an ordered combination to determine whether the claim possesses an "inventive concept" – that is, whether individual claim limitations or the ordered combination of the claim limitations transforms the nature of the claim into a patent-eligible application. *Alice*, 134 S. Ct. at 2355.

The Defendants contend that claim 15 recites only generic computer components and functions and therefore does not constitute an inventive concept. (Defs.' Mem. at 18-20). However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Global Internet Svcs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

In *Bascom*, while "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," the Court found that there was still an inventive concept in the "installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id.* at 1349-50. The claims in Bascom were not "merely recit[ing] the abstract idea of filtering content" but instead "recite a specific, discrete implementation . . . [where] its particular arrangement of elements is a technical improvement over prior art ways of filtering such content." *Id.* at 1350.

Similarly, in *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016), the claims at issue involved enhancing accounting records over a distributed network. *Amdocs*, 841 F.3d at 1300. The Federal Circuit took notice of the technological enhancement found in the patent-in-suit – specifically, that the distributed enhancement of accounting records reduced congestion in the computer network but still allowed the data to be accessible from a central location, thereby reducing database size. *Id.* at 1300

("[T]his claim entails an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)."). The Federal Circuit found that even though this implementation was performed using generic computer components, the generic components operated in an unconventional manner to achieve an improvement in computer functionality. *Id.* at 1300-01.

In this case, the ordered combination of the claim limitations of claim 15 constitutes an inventive concept. Claim 15 does not recite a method of providing directions that preempts all ways of providing directions. Rather, it recites a specific, discrete implementation of utilizing non-proprietary, natural language in a particular arrangement that is a technical improvement over the prior art ways. This ordered combination improves existing client-server navigation technology by overcoming the prior issue of mismatched mapping databases and advancing the compatibility and interoperability of navigation servers and clients, and therefore constitutes an inventive concept. *See Bascom*, 827 F.3d at 1350-51; *Amdocs*, 841 F.3d at 1300-01.

**2. Functional Language in Claim 15 Does Not Preclude a Finding of an Inventive Concept**

Defendants further contend that certain limitations of claim 15 – for example, "non-proprietary, natural language description" and "reconstructing" the optimal route from said description – are not understood or described in sufficient detail in the claim language to constitute an inventive concept. (Defs.' Mem. at 20-23).

Again, this argument misses the mark. The '743 patent specification provides sufficient detail to determine what a non-proprietary, natural language description is. Indeed, both parties have proposed competing constructions of that claim term. Moreover, the '743 patent provides a specific example of a non-proprietary, natural language description. (*See, e.g.*, '743 patent, col. 8, l. 60 – col. 9, l. 39 & Fig. 5). That the claim language is not directed to a specific implementation of a non-proprietary, natural language description does not mean that a technical solution has not been disclosed.

The same is true for the "reconstructing" limitation. The '743 patent explains that the reconstruction of the route will differ depending on the operation of the client device, but nevertheless, the specification gives some examples of how the reconstruction can be implemented. (*See, e.g.*, '743 patent, col. 9, l. 40 – col. 11, l. 14 & Fig. 6). Again, claim 15 is not limited to a specific implementation of "reconstruction," but a technical solution has certainly been disclosed.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Judgment on the Pleadings Under F.R.C.P. 12(c).

DATED: March 13, 2017

KIRBY & KIRBY LLP,

By: /s/ *Michael L. Kirby*
Michael L. Kirby
Heather W. Schallhorn
Attorneys for Plaintiff InfoGation Corp.